IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| ) | Case No: 1:23-cr-00245-1 |
| v. ) | Magistrate Judge Beth W. Jantz |
| ) | |
| **Juan Serna,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court based on Defendant Serna's Motion to Dismiss the Complaint with prejudice. (Dkt. #11.) This Motion followed not one, but two, rounds of disclosures by the government correcting numerous errors in the Complaint. (Dkt. #7, 15.) The defense requested, and the government did not object to, holding an evidentiary hearing, (fn1), which included oral arguments by counsel and testimony by the Complaint's affiant, Officer Jason Jairala, a Task Force Officer with the Drug Enforcement Agency (DEA). (fn2)

      The relevant background is as follows. Defendant Serna was arrested on April 21, 2023. The Complaint was sworn out by Officer Jairala before this Court on April 22, charging Mr. Serna with knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). (Dkt. #1.)

      On April 25, the government filed with this Court and the defense a Disclosure Regarding Errors in the Complaint Affidavit, (Dkt. #7). In summary, the Complaint had included that several types of suspected controlled substances seized from Defendant Serna and other involved individuals had field-tested positive as various types of controlled substances. (Id.) Upon reviewing paperwork on April 24, however, it had come to Officer Jairala's attention that the suspected substances actually had not been field-tested by the time that the Complaint was sworn out. (Dkt. 15.) The suspected controlled substances were subsequently field-tested on April 25, as documented by photographs of the substances and the testing results that the government presented during the hearing as Exhibits 2 and 3. The results of those field tests were that some

---

[1] The defense also filed a Motion to Compel additional witnesses and discovery, (Dkt. #14), but the Court denied this request as moot when defense counsel represented at the end of the hearing on April 28 that the defense was not requesting any further witnesses or discovery in connection with the pending Motion to Dismiss, (Dkt. #16).

[2] At the beginning of the hearing, the defense noted the presence of about ten DEA agents or task force officers in the courtroom. The defense moved to exclude them from the courtroom in case their testimony was needed later. The government presented that the agents and officers were present for "moral support." The Court granted the defense's request to exclude any agents or officers who were involved in this underlying investigation, in case their testimony was needed later.

substances were positive for meth and cocaine base, some were inconclusive, and some were negative (acetaminophen). (Dkt. #7.) The Disclosure also corrected the incorrect dates of conviction of Mr. Serna's prior felonies that had been included in the Complaint. (Id.)

Following the filing of the defense's Motion to Dismiss the Complaint on April 26, the government filed a response in which it included several more corrections of further errors in the original Complaint that Officer Jairala had identified upon a "line-by-line review" of the Complaint: about how Defendant Serna referred to another involved individual; from which ankle the suspected meth was recovered from Mr. Serna's person; and how law enforcement was able to obtain access to Mr. Serna's attic-level apartment. (fn3) (Dkt. #15.)

After considering the parties' written and oral arguments, the testimony and exhibits presented at the hearing, and the underlying Complaint, including Officer Jairala's affidavit in support of the Complaint, the Court finds that there is probable cause supporting the two charges now pending against Mr. Serna, so the defense's Motion to Dismiss with prejudice will be denied. But the Court also writes to express its obvious concerns with what has transpired in this case to date.

In a related context, at a preliminary hearing pursuant to Federal Rule of Criminal Procedure 5.1, it is notable that all reasonable inferences must be drawn in favor of the prosecution. *See, e.g.*, §93 Preliminary Hearing Procedures, 1 Fed. Prac. & Proc. Crim. §93 (Wright & Miller) (5th ed.). Furthermore, the inquiry at a preliminary hearing "is not a retrospective one as to whether there was probable cause ***at the time of arrest***. Rather, it is an assessment of whether there is probable cause ***at the time of the hearing***, and thus it may include an evaluation of evidence gathered subsequent to the formal arrest. As to the quantum of evidence required, it is whether the facts available would warrant a person of reasonable caution in the belief that an offense has been committed." 24 J. Moore, Moore's Federal Practice—Criminal Procedure §605.1.03 (2014) (emphasis added). This temporal consideration is especially important here where the government has presented evidence developed subsequent to the time of the arrest and Complaint that supports a finding of probable cause.

In reaching a finding of probable cause, this Court will run through the familiar element-by-element analysis of each of the two pending charges. But it's worth noting that the defense is not challenging particular elements of either of the charges. Rather, the defense argues that the Complaint (and presumably the prosecution) should be dismissed with prejudice because the Complaint is "defective." (Dkt. #11.) The defense does not cite to any rule or other authority for this requested relief other than Federal Rule of Criminal Procedure 12, which deals with pretrial motions. But none of the cited grounds for a motion alleging a "defect in instituting the prosecution" is in play here: "(i) improper venue; (ii) preindictment delay; (iii) a violation of the constitutional right to a speedy trial; (iv) selective or vindictive prosecution; or (v) an error in the grand-jury proceeding or preliminary hearing." F.R.C.P. 12(b)(3)(A). The defense argued at the hearing that given the "egregious errors" in the Complaint that were only later corrected by the government, the Complaint as a whole cannot stand and that there must be a "sanction" for such conduct. The Court certainly understands the defense's frustration, but the defense does not cite to any rule or case that supports such an extreme measure as a dismissal with prejudice. *Cf.* FRCP 5.1(f) (even when probable cause is not found upon a preliminary hearing, "the magistrate

---

[3] This line-by-line review of the Complaint that was completed 5 days after it was presented to this Court begs the question of why a line-by-line review was not done – in this or any other case -- *before* the Complaint was presented to this Court.

judge must dismiss the complaint and discharge the defendant. [But a] discharge ***does not preclude*** the government from later prosecuting the defendant for the same offense.") (emphasis added). Given this context, probable cause remains the lodestar that must guide this Court's analysis.

With respect to unlawful possession of a firearm by a felon, 18 U.S.C. §922(g)(1), the government must show that (1) Mr. Serna knowingly possessed a firearm; (2) at the time of such possession, he had previously been convicted of a crime punishable by imprisonment for a term of more than one year, and knew that he had been so convicted; and (3) the firearm had been transported in or affected interstate or foreign commerce. *See* Seventh Circuit Pattern Criminal Jury Instructions. Here, during a protective pat-down search incident to Mr. Serna's arrest, law enforcement recovered a KelTec gun with serial #KGN14 from his pocket, which reflects knowing possession. Mr. Serna had previously been convicted of three felonies (the dates of conviction of which the government corrected after the original Complaint, (Dkt. #7)), for all of which Mr. Serna was actually sentenced to more than one year of prison. The government also cited that the gun was not manufactured in Illinois, so it must have been transported in interstate commerce.

With respect to the charge of possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 21 U.S.C. §841(a)(1), the government must show that (1) Mr. Serna knowingly possessed 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine; (2) he intended to distribute the substance to another person; and (3) he knew the substance was some kind of a controlled substance. *See* Seventh Circuit Pattern Criminal Jury Instructions. Here, 85.8 gross grams of a suspected controlled substance was seized by law enforcement on April 21, which Mr. Serna had hidden in his underwear and pants leg, and later field-tested positive for meth on April 25. Both the weight and positive test were documented in photos presented as part of Exhibits 2 and 3 during the hearing (item #M000322259). Additionally, Mr. Serna had participated in numerous recorded communications with a DEA confidential source leading up to the controlled buy at which Mr. Serna attended and was then arrested on April 21, which reflects that Mr. Serna knew he was showing up to sell drugs to the confidential source.

Putting aside the quality or competence of the agency's work, which is a more complicated issue, this Court did find Office Jairala's testimony credible, in no small part because the Officer himself brought the initial errors to the government's attention. Moreover, as described above, there was objective, documentary evidence in addition to the Officer's testimony that also contributed to probable cause in this case.

As the government itself acknowledged during the hearing, however, the result here could have been different had there been evidence that the officer knowingly or intentionally misled this Court in the Complaint. Furthermore, this Court is troubled by the picture painted by the DEA's work in this case. This is because this case does not represent just one error or mistake, which we are all prone to make, no matter how careful we are. Rather, this case reflects a virtual litany of errors, down to the most basic task of whether or not all of the seized suspected controlled substances had been field-tested or not before charging. The Court in no way views itself as an expert on investigatory best practices, but this latter situation suggests a breakdown in process and/or training that warrants further scrutiny from the involved agencies.

The foregoing could be read as an unnecessary shot at this particular officer and/or the agencies involved. The Court does not mean it as such, because the blunt reality is, this stuff matters. Details matter. Judges rely on the accuracy of affidavits in swearing out complaints and

search warrants; they shouldn't be viewed or presented as "rough drafts." Defendants' liberty and privacy interests can turn on the contents of those filings. For example, mistakes with respect to drug type and/or weight can lead to different charging and/or plea decisions with often hefty mandatory minimums in play. These kinds of errors also can lead to the government facing difficulty in pursuing prosecutions of those who have committed serious crimes. Finally, the public's faith in our criminal justice system can be affected by what the public may view as sloppiness or incompetence. For its part, the government properly acknowledged the numerous errors in this case and that those involved should have been more rigorous in checking on facts before presenting them. This Court will, and the rest of us should, expect nothing less going forward.

Date: 5/8/2023

/s/ Beth W. Jantz
United States Magistrate Judge